Good morning, may it please the court. My name is Cori Endo. I'm here this morning in support of Charles Perkins. There are two fundamental problems with the search that took place in this case. First, the limits of what was contained in the affidavit. And second, the information that was left out of the affidavit. Turning to the first defect, the most glaring problem here is that the description of the one image, image 989, as it's referred to, is not detailed enough for a magistrate judge to decide whether or not it involved the lascivious exhibition of genitalia. Counsel, do we at this point have the two images in the record? They are not part of the record, Your Honor. Thank you. They were not submitted to the issuing magistrate, and they were not produced in the district court, and they're not in the record now. Is that correct? That's correct, Your Honor. And so all that the magistrate judge knew was that there was a young teenager taking a picture of herself, a selfie, that the girl is naked and sitting on what appears to be a bed, and that the picture shows from her upper thigh area to her forehead, including her breasts and her genitalia. But from this description, one can't tell whether the picture would be legal or illegal to possess. The magistrate judge had no other information about how her body was positioned aside from seated with an arm extended. So the image would be very different if her legs were spread than if her legs were together. What was the extent of the description in the affidavit? The majority of the description in the affidavit goes to the girl's age. Excuse me one second. And describes that her hips are narrow, that she was 55. Five-five? Yep. Go ahead. This color image depicts a white female sitting on what appears to be a bed with one arm stretched out taking a picture of herself. She's completely nude and can be seen in the image from the upper thigh area to the top of her forehead. Her breasts and genital area are clearly visible, and then the rest has to do with her age. So the magistrate judge had no other information about how her body was positioned, whether she was sitting in a suggestive pose or sitting up straight to see how thin or fat she might look that day. He had no information about what her facial expression was like, whether it was, you know, her lips were pursed or she was doing something sexually suggestive, or whether she just had the expression of a bored 12-year-old. Well, she also had the statement by the officer that this met the federal definition of child pornography. And that legal conclusion is unsupported by what's in the affidavit, Your Honor. Is it? Why? Because if we take this through on what child pornography is, I think it's sexually explicit conduct. Is that right? Well, so there are five categories of child pornography. Four of them fall within the sexually explicit conduct. This is in the more ambiguous fifth category, this inherently subjective determination of whether it involves the lascivious exhibition of genitalia. Right. That's the definition of sexually explicit conduct, is it not? It's lascivious exhibition of genitalia. That's the definition under this fifth prong of the child pornography definition. Right. I'm sorry. I think it's the lascivious exhibition of the genitals or pubic area of any person. Certainly. But what we don't know here is whether the genitals are displayed in some way, or as Constable Ulof wrote in his description,  but nothing in the affidavit here allows the magistrate to decide whether this is child nudity, child erotica. So this one says that it's clearly visible. Yes. Okay. And then the Canadian officer appears, and I'm trying to figure out, but the Canadian officer appears to be going through a description, sort of with the effort to see if it complies with Canadian law. And I guess Canadian law requires certain things, and that is according to their code, because he says it in his affidavit, the Canadian officer, it says, however, the code requires that their sexual organs be the dominant feature of the image, which in this case it is not. So it seems like that's really tied to the code of Canada. I'm just trying to figure out why both of these officers couldn't be correct. There are two parts to the Canadian code. One is that the sexual organ be the dominant feature. And that's a requirement. And that's a requirement. The second part that Constable Ulof also had difficulty with was that there be a clear and obvious sexual purpose to the image. And here he found there was none. And although the wording is different, both the lascivious exhibition and the clear and obvious sexual purpose go to whether or not the image is intended to be sexually arousing or satisfying. Counsel, you said something a moment ago that was new to me, new in the sense it just never had crossed my mind. I was trying to think of what could be a non-sexual purpose of the image. And you mentioned that a young girl, 12 or 14, might want to see what she looked like to see if she looked fat that day. Are there other non-sexual purposes of such an image? Sure, Your Honor. I think one is she could be taking a picture of herself to share with a friend to show her how her body had changed over the summer or to document the changes to her body. Or simply this is what's known as the selfie generation. My ability to get inside the brain of a 12-year-old and why you would do this is limited, but I think there are endless possibilities for why a member of this generation would take a picture of herself. So far we're up to two, and I haven't been able to think of any independently. So if you've got more, tell me if they're endless. So certainly part of it could be to share with a boyfriend or somebody she's sexually interested in, but that doesn't make it child pornography. This image could just as well be child nudity or child erotica. And what's difficult and what the problem with this affidavit is is there's no way for the magistrate judge to decide whether the image is legal or illegal. We're on the spectrum from child nudity to child pornography. So the affidavit had, for instance, no say expert opinion on whether this was a lascivious display or not. Is that right? Did it have something like that in there? The agent who wrote the affidavit expressed his belief that it was that it satisfied the federal. That's right. Well, the legal conclusion that it satisfied the US definition. I mean, there was no, you know, factual component directed to whether or not this was a bit. There was a basis to conclude that it was a lascivious display. That's correct, Your Honor. And so what is your case that because the affidavit didn't have that specificity in it, it's not sufficient to give rise to probable cause that this defendant had a stash of child pornography in his own computer? Is that the basis of your argument? Your Honor, the magistrate judge couldn't make that independent assessment of whether the image satisfied the statute. OK. But the charge isn't that these two images are pornographic. It's just that these two images provide a fair basis from which to conclude that this person had child pornography in his computer. Right. Are you saying these images have to be pornography in order to draw that probable cause conclusion? Yes, Your Honor. These images are not pornographic. What we have is a man possessing legally permissible images who has decades old convictions coming home from a cruise with his wife and his mother-in-law. There's nothing inherently suspicious about this. That reminds me of something else, by the way. There's nothing in here, is there, about in here, I mean, in the affidavit that ties, say, that kind of that kind of, you know, child abuse charge, in this case, 20 years old, that ties that to the person being a collector of child pornography. That's correct, Your Honor. There was no effort. There's nothing nothing to connect it to, is there? No, there's not. Unless, as a matter of common sense, we're all supposed to draw the conclusion that, well, anybody who has a minor sexual abuse charge in the past is likely to be a collector of pornography, right? That's correct. And as this court and many other courts have held, that sort of connection is false. No reason to believe that's the case. I'm sorry to interrupt, Your Honor. What evidence do you have that the American officer, Officer Ensley's omission of details included in, is it Ulock's descriptions, was deliberate reckless, was deliberately reckless? For one, we have the incredible detailed description of what happened in Canada included in the affidavit. And it's many paragraphs that go through that Mr. Perkins invoked his right to counsel, what was and was not found, where the property was stored. The only detail missing from this is that Constable Ulock found the images were not pornographic and that the charges were dismissed. And I think that gives rise to the conclusion that this was at best recklessly omitted and at worst intentionally done so. When we look at the Stannert case that this court decided and the Jacobs case decided by the Eighth Circuit that's cited in the briefs, we see omissions of this sort. In Stannert, a man had been arrested with 14 pounds of cocaine in Panama. And that information was included in the affidavit. But what was not included was that no charges were ever filed, giving this misimpression, leaving the magistrate judge with a misimpression of what occurred. And I think that case and Jacobs are very analogous to what happened here and the kind of omission that was made, leaving the reader and the magistrate judge with a distinct misimpression of what actually occurred. Thank you. Thank you. Good morning, Your Honors. Helen Gruner on behalf of the United States. Let me start with the image. I think that ---- Is it correct that we don't have it? That is absolutely correct, Your Honor. It was not submitted to the magistrate judge or the district court, and so therefore it is not part of the record. Oh, but it would have been if there were a frank shooting, right? I don't know that it would have been. It would have been. It might have been, but the court did not have a frank shooting in this case, and so it was not submitted. Not yet. Not yet. So what we have for the image is we have the Canadian policeman's description and we have the American policeman's description, and that's it. Is that right? That's correct, Your Honor. Well, what do you suppose the purpose of it was, as Ms. Engel detailed, was that it was a case of putting everything that went on in Canada except that the charges were dropped? Well, what's the reason for doing that? Well, Your Honor, I think, quite frankly, the fact that there is a distinct difference between Canadian law and the U.S. law and the way that it is ---- Why raise it at all? Pardon me? Why raise it at all, this Canadian business? I think the fact ---- I think we need to think of this in two pieces. The initial part of the description of what occurred in Canada is relevant to the extent that it establishes that the image was on the computer that Mr. Perkins was carrying when he tried to enter Canada following his trip to Chile. You don't have to go into everything that the Canadian officer, you know, thought about it. You can just say there were those images. In fact, these are the images that were on his camera. He could have given it to the magistrate. Instead of going, well, you know, he thought there were pornography, so they decided to file this charge and all that. You go right up to the place where they said no. In the end, they said we're not going to charge him. Why go through all that? Well, I think, Your Honor, it does ---- In fact, you can go that far. Why not say no, but they drop the charge? They certainly could have added it, and I don't think that it would have made a difference.  Well, Your Honor, I don't think it makes a difference. And I think the district court ---- It doesn't make a difference. Why bring all this up? It does nothing but contaminate the suit. I don't think it contaminates the suit because it describes the events that gave rise to why it is that the officer in the U.S. chose to write an affidavit and bring it to the magistrate judge. The discovery of the photograph, how it was ---- That can't be. That can't be. The discovery of photographs that are not even shown to be pornographic. Your Honor, I would beg to differ. I think the description here does lend itself to lasciviousness. What we are talking about here is, Your Honor ---- Counsel, counsel, counsel, can you hear me? Yes. The Canadian policemen thought that they were not showing a sexual purpose. The American policemen thought they were. I can't see much difference between U.S. law, which requires lasciviousness, and the Canadian law, which requires that the pictures have a sexual purpose. And what the American policeman did is he gave the magistrate his opinion that they are lascivious. He did not give him the Canadian policeman's opinion that they weren't. He did not give him the pictures so that the magistrate could judge for himself. And he gave his opinion that they were, and not the Canadian policeman's opinion, that they weren't. I can't see how that can look like anything but an intentional attempt to control whether a warrant is issued by not giving the magistrate all the information. He omitted the pictures, and he omitted the Canadian policeman's description of the pictures. Your Honor, if I could address your question. First of all, the Canadian law requires that it be a dominant characteristic of the depiction, and that the sexual organ be a dominant characteristic of the depiction. That is definitely different from what is a lascivious image in the U.S., okay? Lascivious in the U.S. means exciting sexual desire. But dominant feature of a photograph is not necessarily the same thing as lascivious. You know what the policeman's view reminds me of very much? He seems to think if you can see the genital area, it's lascivious. And the first thing that came to mind for me was the famous Nick Ut picture, one of the two photographs that contributed to ending the war in Vietnam. It's people running from a napalm attack, and there's a little girl who's totally naked, and her genitals are totally exposed in the picture. And I cannot imagine a human being who would find that exciting to sexual desire. I would agree. I would agree, Your Honor. But there is something different about an image of a 12- to 14-year-old sitting on a bed, completely nude, taking a photograph of herself, situated in such a way that you are showing her breasts and her pubic area. That is very, very different from the image you described. And, in fact, to the extent that you see her. I could judge that better, and the magistrate could judge it better if any of them could see it. I mean, how do I know whether she would just see it if she looked fat, as the opposing counsel said? I would agree that it would be better for you to have that imagery. But I also think if you even look at the Canadian officer's description, the coyness of having hair around the breast sort of suggests the very same thing. And I think that those things are very critical. And I also think that what is missing in Your Honor's recitation of the facts is, in fact, that the Canadian officers believed, at least for a period of time, that what they had was child pornography, so much so that they also obtained a warrant in Canada. So we are talking about here an ultimate legal conclusion that they will not have enough evidence to prosecute this man beyond a reasonable doubt and whether that fact should have been included in the affidavit. And that is what the court found. Don't we have a case that holds that the better course is to submit the picture to the magistrate? Yes, you do, Your Honor. You have Battershell, and a couple of cases have so suggested. And quite honestly, I wouldn't probably be here arguing with you right now if we had done so. But I think that there's some sensitivity, quite frankly, among law enforcement and prosecutors in giving those images and then figuring out how to safeguard those images, which is why they do not get submitted. Let me ask you this. I guess in Canada, the initial officer who saw these pictures, I guess, immediately reacted and thought they were child pornography, is that correct? Exactly. And then he referred it on? He referred it to an officer in the Peel Regional Constabulary, and that officer arrested Mr. Perkins, and then the constable who actually did the final investigation obtained a search warrant and then searched the computer, found only those two images, concluded that the images were not sufficient to prove the case beyond a reasonable doubt. And so did they get a search warrant in Canada? They did. They just dropped the charges after the search? They just dropped the charges. So they felt like there was probable cause? That would be correct. Okay. They just didn't know if they could prove beyond a reasonable doubt. Is that correct? That's the reading of the Will State Statement that Constable Ulock submitted and that was made a part of the record. I do have a question. It looks like Ulock described an image in which the child victim's breasts and genitals are partially obscured, whereas Agent Ansley described them as clearly visible. Which is accurate, and what do we do with that? I think what Constable Ulock describes is the fact that her breast is partially obscured by her hair and then notes that the angle of the photograph is taken from about the level of the head down and that the pubic area is at the bottom of the photograph and not the prominent item in the photograph, I believe is how he described it. And that description is at ER 80. I don't think they're actually inconsistent, and I think actually if one takes a look at Constable Ulock's description of the photograph, it actually adds to rather than subtract from the conclusion that this is lascivious. So in determining whether this omission is material, do we look at Ulock's description and decide whether or not the magistrate would have done something differently? I think, Your Honor, the way this case was brought before the district court, the defense raised two questions, one whether the description was complete. So in that sense, this court can look at Ulock's description and conclude whether the additional omissions of fact somehow rendered the description by Agent Ensley incomplete and then secondarily the legal conclusion by Officer Ulock that it would not be sufficient under Canadian law to prove the case. And so I think right now one of the things we have to look at is whether or not there was enough submitted previously, and I guess now to make a substantial preliminary showing for a Franks hearing. Why hasn't there been enough for a substantial preliminary? I don't believe there has been. First of all, the Canadian officer's conclusion under Canadian law was not material, as the district court found. I mean, there is enough difference between the Canadian law and the U.S. law that a legal conclusion based on Canada simply cannot be material. Maybe his ultimate conclusion that, no, it's not pornographic under Canadian law, maybe it's not material. But I think it is material that he had the opinion that these images didn't have a clear and obvious sexual purpose. Isn't that material? I don't think so, Your Honor. Under Canadian law. When one enforcement officer says this is lascivious and another says it doesn't not have a clear and obvious sexual purpose, that's not material? I think the reason I say that, Your Honor, is if we were talking about two officers in the U.S. operating under the same legal standard, I would say yes, but we are not. We're talking about an officer in Canada who's making a determination as to whether the Crown should go forward with its prosecution. And one branch of that is, does the image have a clear and obvious sexual purpose? And his opinion is, no, it does not. You're telling me that's immaterial to whether or not an image is lascivious under U.S. law? I think that's... In other words, if we had an expert at a trial here... It's not even much of a difference. I mean, that's what lascivious means. Exciting sexual desire. Now, some things, I suppose, can excite sexual desire without having a sexual purpose. If somebody's sexual desires are excited by a tree or a pile of gravel, but really the Canadian law doesn't seem that different. See, one of the problems, I think one of the problems is, you know, we're having a discussion here which I think, you know, should have been had at the Franks hearing. In other words, if you had this Franks hearing, all these things would have been hashed out. You may have even had the photographs there. So the district court or the magistrate, you know, could assess the basis of the assertion in the affidavit that, yes, these images are lascivious. But it's really kind of strange to be having that discussion here, I think. But, Your Honor, in response, let me simply note again that it is a pretty subjective standard, and we do understand that. And if you look at the standards or at least the guideposts that this court identified in Wigand or at least affirmed in Wigand, we have, of the first five, you have at least three of them. You have the nudity. I think what you're saying, when the policeman doesn't reveal the pictures and doesn't reveal the other policeman's description of the pictures, that whether to issue a search warrant is up to the policeman requesting the warrant. It is not up to the issuing magistrate. The issuing magistrate, in your view, it would follow, should not have power over whether to issue a warrant. The American policeman should control that. How do we avoid that if you don't get the pictures and all the descriptive material, and if, as you say, it's kind of subjective? Well, Your Honor, I guess that the one thing that I would take issue with your characterization of what we are arguing here, but that said, to the extent that it is subjective, I don't think that the government, the agent needed to supply another officer's description when he can provide his own description. He may not necessarily agree that, and in fact, I've looked at the image and wouldn't necessarily agree with how he characterized it. But the American policeman may get excited by the pictures of babies in the bathtub, for all I know. It would be nice if the issuing magistrate could judge for himself. But, Your Honor, and one final point, and I realize I'm way over my time, but the issue, I think, as the Wigand Court has suggested, the question is, what did the photographer think? And what we have here, again, let's point back to, is the photographer is the young woman sitting on a bed taking a nude image of herself. And with due respect to my opposing counsel, I doubt very seriously a 12- to 14-year-old sitting nude, taking a picture of herself as trying to take a picture to see if she looks fat today. That just is, I think, the reasonable inference here is that it had a sexual basis. You wouldn't be taking a picture of those portions of your anatomy if that was not the sexual purpose. Thank you. Thank you, Your Honor. Ms. Indo, yeah, sorry, I ended up having more questions in this case, and so Ms. Brunner had a little bit more time, so I'll give you three minutes total. Thank you, Your Honor. I want to clarify a couple of things about what happened in Canada. It was the Canadian Border Patrol agent who initially thought that the images were suspects. So this would be the equivalent of the Border Patrol agent who you see when you come through from Canada to the United States, somebody who does not have any expertise in child pornography. The constable, the one with the expertise who viewed, I think, tens of thousands of images of child pornography through his training and his work, decided that the image was not pornographic after he viewed them. And yes, there was probable cause to search that laptop based upon the Border Patrol agent's description of the images, but what there wasn't was probable cause to search Mr. Perkins' home here in Washington, some 3,000 miles away. And that's the issue here, whether there's probable cause to search Mr. Perkins' home here in Washington State. As to why the information was omitted and the similarities or differences between the United States and Canadian law, I think Agent Chapman's email to Agent, to Constable Ulock, included at ER 84, is something we shouldn't lose sight of. He wrote, so the American agent who's the attache to the Canadian officer says, as you know, we have similar requirements for images to qualify as CP. However, with Perkins' extensive history of sexual assault against children in the U.S., we may have some options. So, although not the agent who wrote the affidavit, but his counterpart on the East Coast, understood that these Canadian and U.S. laws get to the same thing, whether the images have a sexual purpose. We haven't talked about this much, but Mr. Perkins' criminal history really has very little bearing on what happened here and whether there's probable cause, given both the age of those convictions and the affidavit's total, that there was no information in the affidavit tying those prior convictions to a suspicion of possessing child pornography, a second crime. So, if- Do they have any bearing? I think no. Well, what does the law say? The law says that it can be informative, but I don't think any case has held that it's informative with the age of the convictions, similar to what's here. These are more than 20 years old, both of them. But do we look at the gravity of the law? I mean, there was statutory rape and sexual molestation, I think, or incest, I believe. One conviction for incest and one for molestation. Two convictions total that was misstated in the affidavit. One of a four-year-old, I think, his own child, and the other his stepdaughter. Statutory rape, I think she was 12 or 14. Does that have no bearing at all with the image? I mean, that's got to, you know, raise some inference. I think it can raise an inference that Mr. Perkins had some 20 years ago when he was a much younger man, a sexual interest in children. But whether that sexual interest in children, however offensive it may be, whether that can therefore be coupled with he possesses two images, one of which is not pornographic and one of which may or may not be. That he didn't tell the truth about. I mean, he denied that he knew anything about it. It wasn't his computer. It was his wife's, and then it says C. Perk. It looks like it's his. I mean, do the combination of all of that not raise an inference, including the picture and how it's described, whether you put it in the context of the Canadian agent or, you know, doesn't that not make a difference? Well, the computer was his wife's laptop. I think everyone agrees with that. Right, no, but he. He denied knowing that the images were on the computer. Correct. And much was made of that in the district court. I have a laptop computer, and there are many things on it that I put on there that I have no memory are there. And when I traveled with it this weekend to San Francisco, I'm traveling with all of these things, none of which are pornographic, Your Honor. Thank you. Which is just to say I don't think anyone remembers everything they have put on their computing devices or that there's any reason to believe, based on the information here, that Mr. Perkins had recently saved these images. In fact, the information shows that he had attempted to delete them. The affidavit didn't include any information. Either way, that cuts both ways. But anyhow, is there anything you want to wrap up with, please? Your Honor, if the information about Constable Ulock's opinion of the matter and that these images were not for a clear and obvious sexual purpose had been included, what the magistrate judge would have been left with is a man with decades-old convictions who may or may not have possessed illegal images. That cannot be enough to search his home and his computers in Washington, so 3,000 miles away. So we would ask the court to reverse the district court's decision and either vacate the convictions or remand for a Franks hearing. Thank you. Thank you. Thank you both. It was very helpful. I appreciate all the very helpful arguments here today. The case is now submitted.
judges: KLEINFELD, TASHIMA, MURGUIA